Good morning, your honors. May it please the court, Leon Hazani appearing on behalf of the petitioner, Rigoberto Del Cid Marroquin. The petitioner, Mr. Del Cid, faces torture and death in El Salvador. This results from the board wholeheartedly adopting the immigration judge's flawed rationale and in so doing, misapplying the law in four key ways. I think... We have a jurisdictional issue first, don't we, to address? And how is this case different than Coward? It seems like Ninth Circuit precedent, you know, says there's no jurisdiction here. He's been deported. I think that the court does have jurisdiction and that the matter isn't moved. Pardon? I do believe that the court does have jurisdiction in this case as both the petitioner and respondent agree. But you can't confer jurisdiction on a court by agreeing. Either we have it or we do not have it. That's correct, your honor. I would draw the court's attention to the Maldonado case in which the court found that there was jurisdiction despite the removal of... Well, we thought he was back in the country. There was evidence he was back in the country. I would say that... In your briefing, you didn't indicate that there was evidence. In Maldonado, he had gotten a driver's license, and the majority thought that was enough. Well, I think that Maldonado is distinct from this particular case, your honor, for the reason that it's not necessarily that he was back in the country that brought it back to life. I think the concern in the Maldonado case was that he hadn't been in touch with his attorney for years. They had no idea whether if he would prevail that it would have any impact on him at all. Whereas here, the petitioner is in hiding, waiting to return to the United States at the very first opportunity. So do you agree that he's not in the United States? I do agree. So what are the collateral consequences then, given that he's outside of the United States? Cowher says we should look at the collateral consequences of the denial of deferral of removal under CAP. Well, I think there's two consequences here. Number one, the removal order that's been entered is a blanket removal order, whereas in a situation where CAD is granted, the removal order itself would be different. The removal order would have a provision stating what countries removal can't be completed to. Here, he's been denied that opportunity to have such an order or denied the opportunity to be relocated to a third safe country, perhaps. The other distinction I think- Nothing would prevent him from moving on his own right now, is there? Well, other than that there's laws, you know, in all these other countries, whereas the United States would be able to secure permission for him to go and relocate to these places safely. Is there any reason for us to think the U.S. government could get permission better than he could himself if he simply decided to move to pick a country? I believe the answer is yes. He's been convicted of an aggravated felony. He's been deported from the United States. These are all things that he would have to disclose on his immigration application to any country in the world. But right now, he is in a different country, and the only thing pending before us is the denial of the deferral based on CAD. And so we have to say, does that denial alone have a collateral consequence for him now? And I'm having trouble understanding what the collateral consequence is now. I would argue that the collateral consequence, respectfully argue that the collateral consequence is that the United States government could parole him back into the United States and secure a safe third country for him to live in. But they could do that now, right, under their humanitarian, special humanitarian. That has nothing to do with the denial of the CAD. There's nothing in the statute or the regulations that links them, right? There's nothing in the law that would compel them to do that whatsoever. Whereas if there was a removal order against him deferring his removal to El Salvador, the U.S. government would look to take that into account. The other collateral consequence I believe here is that he could potentially be eligible for other forms of relief, whereas in Cower, I believe that there was no other forms of relief available to that particular individual. Well, in Cower they said you couldn't have a waiver of inadmissibility, but I understand that you can't have a waiver in this case either because of the multiple murders. I believe that a 212H waiver would be possible in this particular case. The only reason it wasn't before the immigration court was because he was placed in essentially convention against torture only proceedings, which is different than full removal proceedings, Your Honor. The other distinction I would say, and coming back to the Maldonado dissent, I think that the primary concern there was that if relief was granted, nothing could be done for this particular individual because everyone had lost contact with him. That was the dissent. The majority said he was in the country, so there's the possibility of relief. That's why they decided there was jurisdiction to go forward with it. I would argue that the situation in Maldonado was even worse because he would have had applied to him the illegal reentry bar, reinstatement issues, whereas here none of those issues exist. Well, if he were in the country now, he would be able to argue for deferral of removal under CAT, right? That's our treaty obligations. He would be able to do that, and he would also be able to surrender himself at the border. But it wouldn't be moot if he were in the country. I would argue that it's not moot either way because he's still able to present himself at the border and seek deferral of removal. I don't see the distinction between the two because whether he's in the country or whether he's present at the border, it's going to be factually very similar in how they're going to be treated in their ability to seek deferral of removal under the Convention Against Torture. Did he leave voluntarily? He didn't leave voluntarily. He was forcefully deported. Petitioner asked for stay after stay from this court, and the standard for the stay essentially said, look, what's the harm? You're going to go back to El Salvador, and if you prevail on your petition for review, you're going to come back. If you take a look at the Cower decision, I don't believe that it interpreted the law or analyzed the law in its completeness, which essentially the system set up by Congress under IRA-IRA and the Real ID Act is this. You can seek a petition for review. You can be removed to the country of removal when the administrative order is final by the board. But if you prevail, you can come back, and the government has been implementing that exact standard. They argue in their own papers that that's most likely what would happen if he prevailed here, that he would be paroled back in, and petitioner has operated on that premise. The laws have operated on that premise. Has your client sought for parole? There's nothing preventing him from seeking parole now to be paroled back in. Has he done so?  But why is that? Because that's the government policy. The government policy is not to parole him. So parole is not available for this person is what you're saying? Parole is only available. You haven't applied, so you don't know as for a fact. I'm as certain as can be without having applied that the government wouldn't parole him absent the court granting this petition for review. If the court grants the petition for review, I believe, and I believe the government is also of the understanding that they would parole him back into the United States. So the distinction between this case and Cower is that in Cower he voluntarily agreed to be deported? Is that how you draw the line here? I would say yes. I would say that's definitely one part of it. Are you hoping to ever talk about the merits? Well, I'd like to, but I'd like to reserve some time for rebuttal also. Okay. Your option. Just briefly, I'd say that there's three major legal errors in this case, and, you know, even if you take a look at the government's or the respondent's brief, they don't talk about the standard review when it comes to the law. They adopted the judge's decision. The judge basically said, okay, if there's no statistics, if there's no medical proof equal to modern day medical diagnosis that he's going to be tortured 51 percent above, he can never win on a convention against torture claim. And that just cannot be the standard. There was an expert witness who basically testified that he will most certainly be tortured not only by the government but also by groups that the government just simply cannot control. Why, because he has tattoos on his body? No, it's a combination of factors. His religious beliefs, which he had put into practice while he was in prison, in addition to the threats made specifically against him, this is not about just people with tattoos and it's not about former gang members in general. It's about this particular individual and all of his factors combined. And the judge says, look, this decision that failure to control is just simply dicta and he didn't follow it, which is just not the standard. If there's a group that the government cannot control, I believe that they meet the burden. In addition, he's met the burden in other ways. And I see I have very little time left. Thank you. We'll hear from the Attorney General or her representative. Good morning. May it please the Court. Richard Sanfordine on behalf of the government. Turning to the jurisdictional question first, we do recognize a few points. Obviously, we can't agree to confer jurisdiction on the Court. We do think that Carr. You could agree to parole the alien in and then once the alien's in, then there's a possibility that it's not moot. Are you agreeing? Are you going to agree to parole the alien in? Well, certainly if he prevails on his petition. What does that have to do with it? I mean, I'm failing to understand that because the Attorney General's discretion to parole a person in has nothing to do with our ruling on a deferral of CAT claim. It is purely discretionary. Well, Your Honor, in this case, I'm not so certain that it wouldn't be the DHS that might parole him in, but I couldn't bind whether or not they were going to do that or not. Obviously, they would look at the circumstances whether or not it warranted in this case. I think they believe that because of the nature of the offenses in this case, that the removal was warranted and that there wasn't a valid basis for granting the claim in the first place, which is why the arguments that we made originally to this Court regarding a stay motion. Indeed, it's a stay motion. If the government thought parole was appropriate, it presumably would not have opposed the motion to stay or moved to lift the stay, and that's the piece that concerns me with regard to jurisdiction because if, in fact, we would say that being removed because our court had denied a motion to stay would turn the motion to stay into a merits proceeding every time, which is not how we've approached it. What's the government's position with regard to whether we should deal with the underlying merits every time we take up the stay motion? Well, Your Honor, we think that NCAN should still rule today in terms of the standards on stay motions, but the Carr decision, one thing it did not touch on, is built into IRIRA is the notion that we expect and do argue that aliens can still pursue their petitions for review after they've been removed. That was one of Congress's changes they made to IRIRA. But can they pursue a deferral of removal under CAF? Well, as we said, if he prevailed on the claim, if he pursued his petition for review from afar and prevailed on it, then the DHS would parole him back into NCAN. Why is that? Is there a regulation that says that, or are you just saying they would exercise their discretion to do that, and what's the basis for that? If he prevailed on the petition for review, they would abide by this court's decision and parole him back in pursuant to this court's decision. Can you explain the mechanism for that for me? I don't understand the mechanism. If this court granted relief... So we said that the EIA erred in denying deferral of removal under CAF, which just means that had he been present when he was present in the country, he couldn't be removed. To his—correct. That's all that would say, that the EIA erred in making that decision. And then based on that, what would happen? What legal mechanism would happen? We would notify the DHS that this court had ruled that he could still remain in the United States while they found a third country to remove him to. Had he still been here. I mean, that would be the import of the ruling. Had he been here, he couldn't be removed. We would defer removal. But he isn't here. So how would that affect the DHS's decision? What's the regulation or statute that says they would then have to give him leave to return? Well, I'm not sure there's a particular— the regulation for deferral is under 1208.16 through 1208.18 in the HCFR. What that does is it says that the DHS may look for other countries where he— if this court had ruled that he'd be tortured in El Salvador, that he would not be tortured and seek to remove him there. The difference between withholding of removal and deferral of removal under CAT tends to fall in how the DHS can revoke that. It's fairly arcane, and I've read the sections multiple times to see how the DHS exactly goes about revoking. If they decide, for instance, again, another third country, that they decide that they can remove him to, that he would not be removed there, it's easier to revoke that under grant of deferral as opposed to a grant of withholding. The other option and the other point regarding CAR as well, is in CAR, the alien voluntarily, as we had pointed out in our opening brief as well, that the alien voluntarily withdrew his application and consented to removal. Can you explain how that makes a difference? I mean, Coward directs us to look at the collateral consequences of the particular denial at issue. So how does that make a difference in our analysis? When he withdraws his application for relief, he no longer wants to have his removal deferred to that place. So in that sense, it takes out any sort of... We're no longer weighing out the equities about whether or not the facts would compel a contrary result. Here, petitioner still maintains that he wants to have his removal deferred to El Salvador. And so in that case, we're still looking at the question of, well, if you do prevail and you did have that removal deferred, where else would you end up going? Because again, if you prevailed, then it's a matter of the DHS paroling him back in. As we said, likely they would take him back into custody and lay the facts of this case and then attempt to secure a new location for him. Or if they decided that the facts in the home country had moderated to the extent if this court had ruled against the government that they could remove him there, then they would seek to remove him there again. Just so I understand clearly. So he's not eligible for parole back into the country now, and it's going to be contingent upon whether or not we reverse the decision, right? Everything is contingent upon that in terms of his parole status? I can't find and say whether or not... For instance, if he made an application to be paroled back in today, I cannot guarantee that... Is there metaphysical certainty that they would say no? I don't know about that. But you represent the government, so it would be useful to us if we know what the government's position is one way or the other. Well, like I said, the DHS would typically look at the facts of that case and they would like the discretion to rule on that. We defend what the Board of Immigration Appeals ruled on here, and obviously the board in that case we believe made a correct decision. But in terms of the actual mechanism for how that is, there's an agency that would look at Petitioner and decide under his application whether or not they could parole him back in. I don't believe there's a blanket... But that would not be any different in the Cower case. I don't understand the substantive distinction that you draw. Well, in the Cower case, he withdrew his application. We're just saying if he had reapplied and had that denied, we might be able to weigh that out closer. In Cower, he withdrew his application, didn't want to go back, and never made any application that we know of to go back into the United States. Here, he contested it the entire time. Quickly turning to the merits, if I could just for a... There are merits in there. And tell us why the inability of the government to protect him doesn't give him a basis to claim cat relief. Well, Your Honor, Petitioner would like this court to redefine acquiescence. Instead, what we have and what this court has decided in numerous cat cases is the idea of a twofold inquiry, and neither one has been met here. There was an interesting aspect to this case that I don't think you're going to see in a lot of cat cases. The fact pattern here, the immigration judge listened to the expert testimonies four times, at one point playing it in his car. That's at record page 284. This represented an intense review by the agency, particularly by the finder of fact. It was an extensive, it was a careful consideration of the case. The immigration judge at all times queried counsel for both parties about the state of the law, what they could do about it. This is an inexact science. This is not akin to the SSA grid that they use in ALJs about defining someone whether or not they're injured or have a disability. This is an attempt to glean by trying to refact as best they can. And the bottom line is, in this case, like so many cases, reasonable minds can differ. Is it a certainty that every immigration judge would look at this case and deny it? No. There are probably immigration judges out there that might have granted it. We think, though, under the court standard of review, that does the record compel the conclusion that any other trier of fact would have come to the opposite conclusion as this immigration judge is not sustained by the record. As opposed to the Avendano case where the DHS had issued specific papers about transgendered individuals, the DHS, or the alien in that case had specific instances in the past of torturous harm occurring to her, here we're all looking prospectively. We're all looking forward. We're trying to engage in this inexact science, and the efforts by the agency we think were particularly commendable, and we think they were particularly considered and worthy of upholding by this court. Thank you. This is County Court. Your Honors, with regard to the jurisdiction issue, I would say this. When a petition for review is upheld, it's always restored the particular petitioner back to the status that existed prior to the implementation or finalization of the removal order. A lawful permanent resident is restored to a lawful permanent resident. Once a motion to reopen is granted, individuals are often brought back to the United States, and they're allowed to pursue the exact relief that they had in front of them and put precisely back in time where they were before the removal order. With regard to the merits, I don't believe it's only a factual analysis here that was wrong. The judge clearly states that he's not going to find that if a group cannot be controlled, that that is not going to be enough to meet the Convention Against Torture. If there's even a good intention by the government to control the group, that's simply enough to deny under the law. He is requiring an evidentiary standard of modern medical diagnosis, and that's his own analogy that he uses. He says that when you go to the doctor, they're able to do analytics, research, diagnostic tests, and come up with a very high degree of certainty with regard to these modern mechanisms, whether an individual is essentially going to be tortured or not, and that just doesn't exist. He's requiring statistics and details that no one can ever meet, and that's the evidentiary standard he's implementing. You're now well over time. So we thank you. We thank both counsel for your helpful arguments. Thank you. Thank you.
judges: Clifton, Ikuta, Block